Good morning, Your Honors. Mr. Clerk, I'd like to reserve five minutes for rebuttal. I don't want to wait until the rest of the folks are back. I'm sorry. I'm ready to go. I know you're ready to go. All right. I think we're ready. Okay. I'd like to introduce Mr. Bob Griffin. My client back here with us, Kane and Patricia Griffin. Gerald Madison is my co-counsel from Carson City. Your Honors, we're asking you to reverse and remand or certify this case to the Nevada Supreme Court, and there's a number of reasons why that should be done. This airplane fell on Mr. Griffin, who was an innocent third party, Old Republic-denied coverage, claiming that there was no annual inspection. If you look at Potter v. Ranger, which is a Ninth Circuit case, close in many ways to this, the court said it is sufficient that the insurance company's interpretation of the contract is the only one that is reasonable. Well, this is a fairly clear requirement, is it not, that there be an airworthiness certificate? It's fairly clear, but it wasn't clear to the pilot, and I think that's what's key about this case. It has to be. There's an objectivity analysis to this. It may not have been clear to him, but don't we look at the plain meaning of the words as to what objectively would be reasonable? Isn't that how it works under Nevada law? Well, Nevada, yes, you do start there, but here with the facts, they show substantial compliance, and Nevada does look at the reasonable expectation of the insured, and his reasonable expectation was that he was covered. He had paid for a plane, paid for a pre-buy inspection, which he reasonably thought was an annual inspection, and less than two months later he paid for a mechanic to do everything possible to make the plane safe. Well, but the mechanic may be liable or that entity, but the insurer makes a clear statement that there's a need for an airworthiness certificate. And what is an airworthiness certificate? They don't tell us in the policy. It's not defined there. The phrase annual inspection is nowhere in the policy. They simply say look at the FARs, and when you go to the FARs, the FAA itself, the Federal Regulatory Agency for Aviation, came in and said we're not citing this pilot because it was an unintentional violation. It was an honest mistake. He thought he had done the annual inspection. The other problem with the insurance company's position is there's no causal connection between the failure to have the annual inspection and the plane crash itself. Are there any cases that really help us out of Nevada on this issue? There are cases like Davenport where they say a technical noncompliance is we're not going to exclude coverage due to a technical noncompliance, which is what this is. You're just coming in with some other reason after the fact as a trap for the unwary, saying, well, you didn't have the annual inspection. We don't care whether that caused the crash or not, and even though you thought you'd done it, if someone had stopped him out on the tarmac just before he got in the plane and said, have you had an annual inspection, he would have said yeah. And then they would have said, and can I see evidence of it? And he would have said, well, let me look, and then he couldn't have found it. Well, he got the order, the bill from El Aero and told his wife that's the annual. That was his understanding of what it was. Oh, that's the work that was done on the Magneto and so on? Right. They did work because the engine was running rough. He'd done everything. But that bill says nothing about annual inspection. That's the work that he ordered done. Right. Well, no insurance agent called to his attention, and the insurance agent is the expert, not the pilot, saying you have to use the magic words, Mr. Pilot. When you go in, you have to use these magic words. No matter if you spend $2,000 getting your plane fixed, you have to use the magic words annual inspection. Saying I want everything done to make the plane safe is insufficient. Isn't that rather technical, that he has to go in with this special magic language to the mechanic? He didn't know that, and he wasn't advised of that. And even if he had read the policy, nothing in there would have said annual inspection or defined an airworthiness certificate isn't saying do everything possible to make this plane safe, showing a concern for safety. And that's the purported rationale for Old Republic's exclusion is we want to protect the public. Here the public isn't protected. What evidence do we have in the record as to what the annual inspection, if it had been conducted, would have turned up? I'm interested particularly in the problem of fuel contamination. Right. That is to say one of the possible causes of this was he had trouble with the fuel contamination even before he took off. He drained the tanks a few times, finally got it to run clear. But this is a very old airplane, and we may have trouble with sediment in the tanks and so on. What evidence do we have that the annual inspection would or would not have turned up this problem? We do know that he had talked to his father-in-law, who had flown a lot, and he said this brown sediment is common in planes and don't be worried about it. That's not my question. My question is what evidence do we have in the record that the annual inspection would have looked at this problem? I don't think there's any evidence that they would have looked at that problem. They do other things. Do we have any evidence at all as to what an annual inspection consists of?  The fact that we don't know that it would have turned up this problem is a product that we don't know what an annual inspection would do, period. Say that again. That is to say the reason we don't have in the record whether an annual inspection would have turned up the problem with the fuel contamination is that we don't have anything in the record as to what an annual inspection does, period. No, we don't, Your Honor, as far as I know. But I do know that counsel below stipulated that there's no causal connection for purposes of the motion for summary judgment. So that's a fair issue to raise here, that there was no causation. I got it. So you just stipulated that out for purposes.  So we had apparently plenty of discovery. He thought the pre-buy was an annual. And he had, the pilot, had a reasonable alternative interpretation of the terms that they used and did not use in their policy. And he did everything in good faith. He's the one who paid all the money here. He did the pre-buy inspection. He did paying the mechanic at El Aero less than two months later to make everything safe. He paid the insurance premium. And the reasonable expectation of the insured, the pilot, is I'm covered. That's what he said when he was in the hospital. I've got insurance. Thank God I can cover Mr. Griffin. And lo and behold, the company files a declaratory relief action. Another reason I like Nevada to take a look at that is because Nevada is so strong on giving the insured the benefit of the bargain. It took 30 years for insurance companies to try to get anti-stacking language in their policies in Nevada, because Nevada is leaning so far to interpret policies in favor of the insured, because when people pay money for a premium, they expect that they're covered. And that's another reason why we like Nevada to see this, and both sides have agreed that Nevada hasn't touched this issue. Now, when you say Nevada to see this, are you restricting your request for certification to the causation issue, or do you want something broader than that to go to the Nevada court? I'd like to also bring in the public policy concern that it looks like we're helping public safety here, but really we're only helping the insurance company. Wait a minute. That's a little ‑‑ I'm not sure how we would frame that. That's a argumentative, which you're entitled to be, but I think let's explore that. You invoked Potter in your opening statement. And Potter found that the airworthiness requirement was unambiguous and required, did it not? Potter did. And the policy of an airworthiness certificate seems on its face, just like a policy may require a driver of a car to be a licensed driver, that the policy will be voided if the pilot doesn't comply with the airworthiness requirements. That is a mechanism, is it not, to protect the public? Now, when he doesn't do it, and the unfortunate incident that we're dealing with here, a third party, not the pilot, is the one who suffers the grievous injuries, I understand there's a problem in terms of, in that case, now there's no insurance. And maybe the causation issue goes to that. But to have a requirement that there be an airworthiness certificate as a condition of coverage, you say is contrary to public policy? Well, here we have a record different from Potter v. Ranger because it's been developed. Here you have an intelligent man, a doctor, former military pilot, who's flown small planes, and he doesn't know what they mean by it. And they don't define the term. It's there in the record that he thought it was something having to do with the planes manufacturer and the worthiness coming out of the factory. So, yes, I have to say the insurance company can shift risks, but there has to be notice, it has to be clear what we're talking about and requiring him to do. All the insurance agent had to do when he went in, say, oh, you have your pre-buy inspection? Well, for a few hundred dollars more you can have the annual, he'd be caught up on that, because that's going out in six weeks. The insurance agent is the expert, not the pilot. The pilot's just initialing stuff and paying the check. And he asked the agent, am I fully covered? The agent said yes. Then the company sends out a letter. They don't say, now you be sure, this airworthiness certificate, here's a copy of one, here's what it looks like, you go get one. It never tipped him off. I mean, the burden is on the insurance company to lead him to get an airworthiness certificate when the policy itself says it's required. It's the burden on the insurance company to make sure that he does it. Aren't they the ones that are wanting to be a higher authority than the FAA? The FAA says, you know, no citation here even. And the insurance company is saying, well, we're a higher authority. We are going to absolutely technically use this exclusion to exclude you from a million-dollar contract. Well, it's a pretty direct exclusion. And it would seem to me that the person getting insurance who had any question about that would have the burden to question whether it's needed or what it means. But it seems to say you've got to get it. Well, that's why I would like the substantial compliance as well as causation issues to go to Nevada, because Nevada has granted latitude when there is substantial compliance, and there was here. You stipulated out of this case the causation issue, did you not? No. No, he stipulated that there was no causation between the failure to have the annual and the crash. That's what I meant. Right. So that's still an active issue here that Nevada, I suspect, based on my reading of insurance cases in Nevada, would say, no, if you're going to do an exclusion, that's pretty harsh. That's a forfeiture. We want to see some relationship between this failure to have an annual and the crash itself. Now, you wanted to save five. We're down to three. Would you like to save some time for rebuttal? Yes, I would.  Good morning. May it please the Court, my name is Stephen Kent from Reno, Nevada. Your Honor, what I want to start on first is the concern that you raised. I think there's a lot of confusion about this ambiguity issue and whether or not Dr. Jensen understood the airworthiness annual requirement. It's very clear in his deposition that he knew the airplane needed an annual inspection. What he claims in his testimony is that he had some confusion about whether or not the airworthiness requirement included the annual inspection. And if you read his testimony carefully, and that is at age 351 in that vicinity in the supplemental record, what Dr. Jensen says, he first says, and his testimony is contradictory, and I think if you read it, you'll see that it's not very credible. But what he says is, I thought that the airworthiness inspection requirement was a requirement that was administered or required when an aircraft is first sold, that being that the FAA has said this plane is airworthy. But he goes on later in his testimony and says, I knew that there was an annual inspection required every year. He also says, I knew that that had to be noted in the logbook. So whether or not he understood the airworthiness in the context of the annual doesn't matter. He knew that that plane had to have an annual inspection, that there had to be a notation in the logbook, and he also admitted in his deposition that he was obligated, before he got in that plane as a pilot and an owner, that it was his responsibility to ensure that that plane had the annual inspection, which he did not do. It is undisputed that there was not an annual inspection on this aircraft or that it was airworthy. The truth is that the airworthiness inspection is a well-known requirement. Every pilot that testified in this case said, of course we know the airworthiness annual inspection requirement. It's well-known. Even Dr. Jensen said, I studied that when I was taking my flight classes. I had the FARs back at home. So that testimony, it's with hindsight. It's Dr. Jensen trying to find coverage. It's not credible. But even when you look carefully at his testimony, he says, I knew I needed an annual. I knew it had to be noted in the logbook. I got in that plane and flew, as you pointed out, Judge Fletcher, without looking at the logbook and making sure that it was a safe plane to fly. Well, I didn't quite say that. All right. But the requirement of an annual inspection and the airworthiness factor is not a trifling requirement. It's not something that the insurance company throws in just to defeat coverage. It's an integral part of the FAA's attempts to make sure that we have safe aircraft. Now, jumping then on to the safety issue, what is the evidence in this case as to what, if any, relationship there was between the lack of a certification or an annual inspection and why this crash actually happened? I'm glad you asked that, Fisher. I don't agree with counsel. There was not a stipulation that there was no causation in this case. The causation was unclear. What we argued was you don't have to determine the causation in order to find no coverage. But this is what the evidence was on causation. First of all, there's Dr. Jensen's testimony that he had an aircraft that had sputtering and engine problems. And that he found sediment in the fuel. I believe there was evidence that the annual inspection would have checked the fuel filters, would have checked the gasoline, and presumably would have found such a problem if it existed. The other evidence is the investigation by the NTSB. They concluded that the cause of the crash was pilot hair. In other words, Dr. Jensen was on final approach. He was switching tanks. He had tip tanks, wing tanks. He switched those over and didn't get the switch all the way. It was in between switches, so it resulted in fuel starvation. That's what the NTSB thought the cause of the crash was. And, of course, that was a subject of the tort case, what was the cause of that. That was never concluded. So our argument in front of the district court in the coverage case was it doesn't matter what the causation was. The majority of courts have found that causation is not the key. That the key is, was this, number one, was the exclusion ambiguous? And, number two, if it was not ambiguous, is it against public policy? And in both of those, the district court agreed that it was not ambiguous and it was not against public policy. So do you think it's inadvisable for us to certify the causation issue since there's a division of authority on that, particularly when we're dealing with third-party claimant here? I do, Your Honor, for these reasons. One, I don't think there's a legitimate division of authority. The vast majority of cases on the subject find that it's not an ambiguous provision, even this court in the Potter v. Ranger, and that those cases that, as the district court noted, weren't even really a minority aren't a majority or a minority. But there's no Nevada authority on it, and there is authority in some jurisdictions that causation is a relevant issue. And some of the cases you cite, I'm not sure, are as clear-cut as perhaps you think they are. In any event, there is a division of authority, is there not? There's some contrary authority, and let's talk about that authority, Your Honor. There's the Pickett and the Puckett cases, Florida and Texas. Florida says, we've got an anti-technicality statute. The legislature said, we're going to have a rule in Florida that says you have to show for an exclusion that the loss was caused by that exclusion. Same thing in Texas. So those states have adopted statutes that have set public policy in those states. So those cases are not helpful. How important is this question to insurance law, this causation question? How important is just causation in general? Yes. I mean, how important is this question not just to this case? I understand it may be important to this case. How important is it in general? Well, I'm not understanding, Your Honor. I'm sorry. Well, what I'm after is I'm trying to figure out if this is a question that arises so infrequently that the Nevada Supreme Court won't care much whether we get Nevada law right or another way of asking this, getting at the same question, what harm is there in our certifying to the Nevada Supreme Court to make sure we get the answer right? Okay. Well, let me answer the question this way. The question, number one, I don't think is unanswered. Nevada has already said when we're analyzing an exclusion, we're going to do exactly what almost every other state does. That is, we're going to analyze, is the exclusion ambiguous? And two, is it against public policy? And just like the district court, the key question in a seeking certification is, is it a novel question? This is not a novel question. Well, it's not a novel question, but is there an established answer in Nevada law? I think there is. That's the analysis of what ---- And if we conclude that the Nevada law at the moment, at least as we see it, is ambiguous, do you still object to certification? And if so, why? I don't object to certification if you find that Nevada law is ambiguous. But there are cases, Your Honor ---- What's the strongest? So when we write the opinion in your favor ---- Sotriacus. Farmers v. Sotriacus tells you how to analyze an exclusion and whether it would be enforced. The other, there's another case that I cited, Your Honor, which talks about in Nevada ---- They raise the issue in that case about causation? In farmers? Sotriacus case talks about how the Nevada Supreme Court analyzes an exclusion. That test is on almost every state. Is it ambiguous? If it is, then we'll apply rules of construction. And then the public policy question. No, I understand. That wasn't my question. Do they ever reach or raise the causation issue? Was that a claim by the insured in that case? In another case, I'll have to look in my brief. The case doesn't come to mind. But in another case, it's a case involving a life insurance policy, a death. And the question was, does the ---- It was a case where there's an exclusion for someone who's committing a felony in a life insurance policy. Ramdano? Ramdano? I'm sorry. I just don't remember the name of it. But in that case, the Nevada Supreme Court said, we're not going to require that the commission of the felony be the cause for the death in the life insurance policy. The insurance policy required that the death not be occurred during the commission of a felony. That's what happened in this policy, this circumstance. We realize it's a harsh result, but we're going to enforce that exclusion because it's a legitimate means for the insurance company to limit its risk, just like in this case. This isn't something that an insurance company just pulls out of the air to be a roadblock. It's an important public policy that we have safe aircraft, just like that case I'm talking about. Well, why don't you ---- You say you've cited it in your brief? Yes. I have the Ramdano case. If it's something different, that's okay. You can get it. I don't want you to have to take your time looking. Unless you can get it quickly because I'd like to know which case you're relying on because we're looking for clarity in Nevada law, and you're arguing that by analogy. Just let me look at that real quick. Sorry. It's going to take me a little time to find that case that I described. Can I ---- It's in your brief. I believe it is, Your Honor. Can I, if I need to supplement with that case? It's a case I was describing about an individual who dies, and there's an exclusion in life insurance policy that excludes coverage if the death occurs while he's dead. Let's do this. If on further inspection, sort of lawyerly-worthiness inspection, you discover that the case is not in your brief, you may submit a citation to the case by letter. If you wish to respond in a one-page letter, you may do so once that letter comes in. And let's do this all within ---- you do it within two days, and you respond within two or three days after that. Okay. Thank you, Your Honor. Sure. I want to talk about one other thing, and that's this idea that because Dr. Jensen wasn't cited that this has some significance, that the FAA requirements are, you know, it doesn't matter if you do your annual inspection. There's just not evidence of that. What counsel cites to in the brief is Dr. Jensen's affidavit, where he speculates that the reason that I wasn't cited was because the FAA doesn't care. There's just no evidence at all of that. I cited to you the CFRs that require a pilot, when he gets in that airplane, to not guess about it, not try his best to make sure that the airplane is safe, but to look at the logbook or don't fly. And that's the same thing that this exclusion does. Don't fly that airplane unless you know that it's airworthy, which includes having an annual. And Dr. Jensen talked about that in his deposition. He said the annual is noted in the logbook. He should have gotten that out and looked at it. And there's just so much evidence that contradicts this idea that he didn't know. All of the salesmen that sold him the plane told him, and this is all in the record, that that plane is going to need an annual in July. It's a factor, of course, in buying the plane because that costs more money to have to do the annual. I think there's three or four witnesses told him that. His own father-in-law said, of course, the airworthiness requirement is well known, and I'm sure my son-in-law knew that. So the idea that nobody cares whether he has an annual inspection is totally false. The annual inspection is the way that the FAA makes sure that the plane has the updates. You know, an old plane has to have updates to it. Could you wrap up? We're over time. I'll give you a little time to summarize if you like. Thank you, Your Honor. So the requirement is not trifling, Your Honor, and we appreciate your affirming the trial court. Thank you. Thank you very much. Rebuttal? I believe he said he did not object to certifying to the Nevada Supreme Court on the issue of causation. I actually didn't think it was necessary. He didn't sound very enthusiastic. Well, I'm not surprised because in my additional authorities, I pointed out that Nevada likes to see bold print for exclusions and insurance policies in a certain size of type, just as this court has a certain size of type so people can read it and see it clearly. And the Nevada cases, Stoenig, for example, says an insurance policy is a contract of adhesion and should be interpreted broadly, affording the greatest possible coverage to be insured. I don't think, speaking for myself, you get a lot of mileage out of arguing the clarity of this contract. I think the issue is the disclarity of Nevada law, at least for me, on the issue of causation. Assuming it is clear enough and satisfies Nevada law on the exclusion, does Nevada embrace a notion or would it embrace a notion that, nonetheless, if it doesn't have anything to do with a particular accident, it's against Nevada's public policy to deny coverage to a third party who is injured as a result of this accident, which would not have been forestalled or prevented by the airworthiness certificate? Well, I'd like to see Nevada get a shot at what they are going to say so they clarify their position. Okay. Okay? Thank you. Thank you both sides for a very helpful argument. The case of Old Republic Insurance v. Griffin is now submitted for decision. The next case on the argument calendar is Williams v. Bodo.
judges: D.W. Nelson, W. Fletcher, Fisher